**In re PAN AM CORPORATION et al.**

**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,**

**v.**

**PAN AM CORPORATION, Pan Am American World Airways, Inc., Pan Am Shuttle, Inc., Pan Am Express, Inc., PAA Corporation, Allmat International, Inc., Alert Management System, and Pan Am Commercial Services, Inc., Respondents.**

**No. M47 (PKL).**
**Bankruptcy Nos. 91 B 10080 (CB) thru 91 B 10087 (CB).**

United States District Court,
S.D. New York.

Nov. 21, 1991.

Pension Ben. Guar. Corp., Washington, D.C. (Carol Connor Flowe, Gen. Counsel, William G. Beyer, Deputy Gen. Counsel, Jeffrey B. Cohen, Asst. Gen. Counsel, Carol A. Resch, Mark K. Bentley, Anna Y. Chytla, of counsel), Milbank, Tweed, Hadley & McCloy, New York City (Wilbur F. Foster, Jr., of counsel), for plaintiff.

Cleary, Gottlieb, Steen & Hamilton, New York City (George Weisz, of counsel), for respondents.

## ORDER AND OPINION

LEISURE, District Judge.

In this action, the Pension Benefit Guaranty Corporation ("PBGC") moves, by Order to Show Cause, pursuant to 28 U.S.C. § 157(d), for withdrawal of objections filed by Pan Am Corporation, Pan American World Airways, Inc. ("Airways"), Pan Am Shuttle, Inc., Pan Am Express, Inc., PAA Corporation, Alert Management Systems, Inc. and Pan Am Commercial Services, Inc. ("Debtors") in the *In re Pan Am Corporation, et al.* Chapter 11 case ("Bankruptcy Proceedings").[1] The objections PBGC seeks to have withdrawn are a response to claims PBGC filed in the Bankruptcy Proceedings, and concern the Debtors' liability for unfunded benefit liabilities and unpaid minimum funding contributions upon termination of benefit pension plans under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301–1461.

The Debtors' objections to PBGC's claims require consideration of the interaction of Title 11, ERISA and the Internal Revenue Code ("IRC"). PBGC argues, and the Debtors concede, that these multiple considerations mandate withdrawal of the objections from the bankruptcy court pursuant to 28 U.S.C. § 157(d). However, the Debtors simultaneously request that the matter be remanded to the bankruptcy court for proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c).[2] For the following reasons, the Court finds that withdrawal of the reference is mandatory. However, in the interests of judicial economy and efficiency, the Court remands the matter to Hon. Cornelius Blackshear, Judge of the Bankruptcy Court for the Southern District of New York, for submission of proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1).

## BACKGROUND

The following constitutes the findings of fact and conclusions of law of the Court pursuant to Fed.R.Civ.P. 52(a).

PBGC is a wholly-owned United States Government corporation established under § 4002 of ERISA, 29 U.S.C. § 1302. It administers the single employers pension plan termination insurance program under Title IV of ERISA. When a pension plan within Title IV terminates without sufficient funds to cover Title IV guaranteed benefits, PBGC takes control of the plan and makes up deficits in the plan's assets from its own funds.

On January 8, 1991, the Debtors filed petitions for bankruptcy under Chapter 11 of the Bankruptcy Code. At the time the petitions were filed, Airways was the sponsor of three pension plans: the Pan American World Airways, Inc. Cooperative Retirement Income Plan; the Pan American World Airways, Inc. Fixed Benefit Retirement Plan for Pilots; and the Pan American World Airways, Inc. Defined Benefit Plan for Flight Engineers (the "Plans"). All three of these plans are subject to the ERISA Title IV termination insurance plan administered by PBGC.

Throughout the 1980s, the Internal Revenue Service ("IRS"), pursuant to 26 U.S.C. § 412, granted to Airways a series of waivers of the minimum funding contributions regularly due to the Plans. Further, due to Airway's financial plight, the IRS periodically modified the waivers to provide the Plans with security. A modification of the

---

1. Oral argument on the Order to Show Cause was heard by this Judge on November 19, 1991.

2. The Creditor's Committee, which was represented by counsel at the hearing on November 19, joins in the Debtors' request for a remand to the bankruptcy court.

1983 and 1986 waivers was granted by the IRS on September 14, 1990. This modification was subject to a number of conditions, including a requirement that Airways contribute $30 million to the Plans on the earlier of either November 1, 1990 or the sale of Pan Am's German Routes. Further, to secure a $53 million obligation that arose as a result of a waiver that yielded deferral of contributions due in 1989, Airways was required to pledge 100% of its Shuttle stock to the Plans.

Although the German Routes were sold on October 26, 1990, Airways failed to pay the $30 million to the Plans. Accordingly, the IRS revoked the waivers, as modified, on October 26, 1990. Further, Airways' failure to comply with its obligations under the Shuttle stock pledge agreement resulted in PBGC obtaining $53 million in secured claims on behalf of the Plans in the Bankruptcy Proceedings. Subsequently, on July 24, 1991, PBGC filed two actions, currently pending before Hon. Michael B. Mukasey, United States District Judge of this Court, to terminate two of the Plans. Airways applied to PBGC to terminate the third Plan on October 4, 1991.

PBGC, by order of the bankruptcy court, filed proofs of claim with respect to the Plans in the Bankruptcy Proceedings on September 19, 1991. The claims for minimum funding contributions pursuant to 26 U.S.C. § 412(a) and 29 U.S.C. §§ 1082 & 1362(c) that were filed by PBGC on behalf of the Plans total $364,134,540. PBGC also filed $914,489,000 in claims for employer liability due upon termination of the Plans, pursuant to 29 U.S.C. § 1362(a), 30% of which are entitled to priority pursuant to 29 U.S.C. § 1368(c)(2) and 11 U.S.C. §§ 503(b)(1)(B) & 507(a)(1) & (a)(7). Other general unsecured claims of just over $2.5 million were also filed pursuant to 29 U.S.C. § 1307(a)-(c). The Debtors' objections were filed on November 7, 1991, and are to be heard between November 21, and December 3, 1991. PBGC's instant motion seeks withdrawal of these objections from the bankruptcy court.

DISCUSSION

■ 28 U.S.C. § 157(d) provides as follows:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Although section 157(d) could provide an "escape hatch through which most bankruptcy matters [could] be removed to the district court," 130 Cong.Rec. H1850 (daily ed. Mar. 21, 1984) (Statement of Rep. Kramer), the statute has not been read so broadly. Thus, the district courts have generally followed the teaching of the District Court for the Northern District of Ohio in *In re White Motor Corp.*, 42 B.R. 693, 703, 705 (N.D.Ohio 1984), which found that withdrawal is mandatory only where "substantial and material consideration" of non-code federal statutes "is necessary for the *resolution* of a case or proceeding." *See also In re Chateaugay Corp.*, 108 B.R. 27, 28 (S.D.N.Y.1989) ("Chateaugay II"); *In re Johns–Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y.1986).

There are a number of different cases in which matters have been withdrawn from the bankruptcy court pursuant to section 157(d). For example, the interaction of Title 11 and section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a), has served as the basis for withdrawal of the reference. *See, e.g., American Telephone & Telegraph v. Chateaugay Corp.*, 88 B.R. 581 (S.D.N.Y.1988); *In re Combustion Equipment Assoc., Inc.*, 67 B.R. 709 (S.D.N.Y.1986); *Johns–Manville, supra.* Further, and of greater relevance here, withdrawal of the reference was found to be mandatory when resolution of the proceeding required analysis of the interaction of Title 11 and ERISA. *See Chateaugay*

II, supra; In re Chateaugay Corp., 86 B.R. 33 (S.D.N.Y.1987) ("Chateaugay I"); Columbia Packing Co. v. Pension Benefit Guaranty Corp., 81 B.R. 205 (D.Mass. 1988).

In the instant case, the debtors raise numerous objections to PBGC's claims that involve the interaction between Title 11, ERISA and the IRC. First, it appears that the Debtors' claim that unpaid minimum funding contributions are not entitled to priority under 11 U.S.C. §§ 503(b)(1)(B) & 507(a)(1) & (7) conflicts with 29 U.S.C. § 1082(f) and 26 U.S.C. § 412(n). This issue, in fact, appears to be one of first impression. The Debtors' claim that the IRS lacked authority to revoke the minimum funding waivers it granted to Airways under 26 U.S.C. § 412(f) appears to conflict with ERISA's minimum funding and waiver provisions. Further, the Debtors' challenge to the application of joint and several liability requires consideration of 29 U.S.C. §§ 1082(c)(11) & 1362(a) and 26 U.S.C. § 412(c)(11). The Debtors' assertion that the lien created in 29 U.S.C. § 1368 violates the automatic stay provision of 11 U.S.C. § 362(a) also requires consideration of the interaction of Title 11 and ERISA.

It is thus clear, as a threshold matter, that the requirements for mandatory withdrawal of the reference under 28 U.S.C. § 157(d) have been met. Although Judge Kevin J. Duffy of this Court has already addressed some of these issues in In re Chateaugay Corp., 130 B.R. 690 (S.D.N.Y.1991) ("Chateaugay III"), this does not require a contrary result. In fact, Chateaugay III was a case where Judge Duffy had already withdrawn the reference under section 157(d). See Chateaugay II, supra.

■ Nevertheless, the mandatory withdrawal of the reference does not end the Court's inquiry. In Chateaugay II, Judge

Duffy withdrew the reference under section 157(d), and then remanded the matter to the bankruptcy court, pursuant to 28 U.S.C. § 157(c)(1), for submission to the district court of proposed findings of fact and conclusions of law.[3] See also In re Pension Plan of Wheeling–Pittsburgh Steel Corp. Mon Valley Plants, 1988 WL 179896 (W.D.Pa). Although not precisely within the plain meaning of section 157(c)(1), which addresses non-core matters, remand of the instant core matter,[4] concerning the allowance or disallowance of claims, is consistent with 29 U.S.C. § 1341(c)(2)(B)(ii)(III), which allows bankruptcy judges to determine pension plan termination issues. See Chateaugay II, 108 B.R. at 29.

Further, the dynamics of the situation militate in favor of remand to the bankruptcy court for submission of proposed findings of fact and conclusions of law. The Pan Am bankruptcy has been before the bankruptcy court for over 11 months, and Judge Blackshear has developed considerable familiarity with the action. In fact, approval of the plan of reorganization is contingent on resolution of PBGC's claims and the Debtors' objections thereto. Given Judge Blackshear's understanding of the interaction between ERISA and Title 11, and his familiarity with the parties to the action and the impact of PBGC's claims on the Debtors' estates, remand to the bankruptcy court will lead to the most efficient and timely resolution of PBGC's claims.

Although remand to the bankruptcy court has been ordered in other cases, PBGC submits that such a course is error. In support of this argument, PBGC relies on Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held that a party has a constitutional right to have a

**3.** Section 157(c)(1) provides that: A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

**4.** It is undisputed by the parties that the claims and objections are core proceedings. See also 28 U.S.C. § 157(b)(2)(B).

non-core matter tried before an Article III judge. *See id.* at 73–76, 102 S.Ct. at 2872–74. From this holding and the language of Section 157(d), PBGC infers that it "is entitled to have all of the significant issues raised by the objections heard by a district court in the first instance." *See* Memorandum of Law in Support of PBGC's Petition for an Order to Show Cause, at 22–23. However, *Marathon* addressed the constitutional right under Article III to have so-called private rights adjudicated by Article III judges, and the case provides little support for PBGC's position that it has a right to have these core matters adjudicated by a district judge in the first instance. Further, by referring the action back to the bankruptcy court, the district court retains jurisdiction, and will conduct a *de novo* review of the proposed findings and conclusions submitted by the bankruptcy court as part of its role under section 157(d).

PBGC draws the Court's attention to 1 *Collier on Bankruptcy* ¶ 3.01, at 3–67, to support its position that:

> the mandatory withdrawal provision of section 157(d) is quite specific, admitting of no exceptions when a withdrawal motion is made, and if Congress had intended that a [matter be remanded to the bankruptcy judge] to make proposed findings and conclusions in such matters, Congress would assuredly have said so.

However, on the very next page the treatise addresses the deletion of language from the proposed bankruptcy statute that would have specifically addressed this issue:

> Just as likely is the conclusion that the trial might be before the bankruptcy judge and the dispositive order made by the district judge under section 157(c)(1) procedures.

*Id.* at 3–68. Thus, in the absence of explicit Congressional direction, the Court returns to Judge Duffy's admonition that "[t]he interests of judicial economy and expediency will best be served by the [bankruptcy judge's] continued participation in the matters at issue here." *Chateaugay II, supra,* 108 B.R. at 29. The Court there-fore finds that remand of the matter to Judge Blackshear is appropriate.

## CONCLUSION

This Court hereby orders that PBGC's claims and the Debtors' objections be withdrawn from the bankruptcy court under 28 U.S.C. § 157(d), and remanded to Bankruptcy Judge Blackshear for the submission of proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1).

SO ORDERED.