In re IONOSPHERE CLUBS, INC., Eastern Air Lines, Inc., and Bar Harbor Airways, Inc., d/b/a Eastern Express, Debtors.

Martin R. SHUGRUE, Jr., as Trustee of the Estate of Eastern Air Lines, Inc., Plaintiff,

v.

PENSION BENEFIT GUARANTY CORPORATION, Defendant.

No. 92 Civ. 4226 (CSH).

United States District Court, S.D. New York.

July 22, 1992.

Carol Connor Flowe, Gen. Counsel, Pension Ben. Guar. Corp., Washington, D.C., John H. Falsey, Deputy Gen. Counsel, Nancy S. Heermans, Asst. Gen. Counsel, Marc A. Tenebaum, Atty., Otterbourg, Steindler, Houston & Rosen, P.C. New York City (William M. Silverman, Enid Nagler Stuart, of counsel), White & Case, Washington, D.C. (John J. McAvoy, Anne D. Smith, of counsel), for Pension Ben. Guar. Corp.

King & Spalding, Atlanta, Ga. (Daniel J. King, Darryl S. Laddin, of counsel), for Martin R. Shugrue, Jr., trustee.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Pension Benefit Guaranty Corporation ("PBGC") petitions by order to show cause for withdrawal of the reference of this adversary proceeding to the bankruptcy court.

On March 9, 1989, Eastern Airlines, Inc. ("Eastern") and affiliated companies filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. The Chapter 11 cases are pending

before Chief Judge Lifland. *See* 89 B 10448 (BRL), 89 B 10449 (BRL), and 91 B 10287 (BRL). On April 19, 1990, Martin R. Shugrue, Jr. was appointed Trustee of Eastern's bankruptcy estate (hereinafter "the Trustee").

PBGC is a wholly-owned United States Government corporation established under section 4002 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1302. It administers the Single Employer's Pension Plan Termination Insurance Program under Title IV of ERISA. When a pension plan within Title IV terminates without sufficient funds to cover Title IV guaranteed benefits, PBGC takes control of the plan and makes up deficits in the plan's assets from its own funds.

During the times pertinent to this proceeding Eastern was a contributing sponsor, within the meaning of section 4001(a)(13) of ERISA, 29 U.S.C. § 1301(a)(13), of seven defined benefit pension plans covered by Title IV of ERISA. The seven plans related to seven categories of Eastern employees.

Eastern was obligated to make contributions to the plans pursuant to minimum funding requirements found in the Internal Revenue Code ("IRC"), 26 U.S.C. § 412, and ERISA, 29 U.S.C. § 1082. For plan years 1982, 1985, and 1987, Eastern requested and the Internal Revenue Service granted waivers of Eastern's minimum funding obligations pursuant to the IRC, 26 U.S.C. § 412(d), and ERISA, 29 U.S.C. § 1083(d). Eastern made contributions to the plans between January and March of 1989, at least some of which were payments in accordance with conditional funding waivers granted by the IRS with respect to those earlier years.

On October 4, 1990, PBGC and the administrator of the plans executed an agreement terminating the plans pursuant to section 4042 of ERISA, 29 U.S.C. § 1342, appointing PBGC as the plans' statutory trustee, and establishing October 5, 1990 as the date of termination of each plan under section 4048(a), 29 U.S.C. § 1348(a).

Since the terminations of the plans, PBGC has been paying the plans' participants their estimated benefits under Title IV of ERISA, calculated in part on the amount of assets in each plan at the time of its termination. At least some of the plans' participants are currently being paid benefits in excess of the amount guaranteed under Title IV.

On April 17, 1992, Shugrue as Eastern's Bankruptcy Trustee commenced an adversary proceeding against PBGC seeking to recover for Eastern's estate $117,101,008 that Eastern had contributed to the plans during the ninety days preceding its bankruptcy petition on the ground that those transfers were avoidable preferences under the Bankruptcy Code, 11 U.S.C. § 547. That adversary proceeding is presently pending before Chief Judge Lifland pursuant to this Court's standing order of reference. *See* 28 U.S.C. § 157(a). PBGC now moves this Court pursuant to 28 U.S.C. § 157(d) for a withdrawal of the reference of the adversary proceeding to the bankruptcy court. The Trustee opposes that application.

### Discussion

Prompted by *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress enacted 28 U.S.C. § 1334, providing that the district courts have original and exclusive jurisdiction of all cases under Title 11. 28 U.S.C. § 157(a) permits the district courts to refer bankruptcy cases to the bankruptcy courts, a reference which this Court has made to the Bankruptcy Court of this District by standing order. But 28 U.S.C. § 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The first sentence of § 157(d) permits withdrawal "for cause shown." The second sentence mandates withdrawal of a proceeding if its resolution "requires consideration" of both the Bankruptcy Code and other federal law affecting interstate commerce.

The statute does not define "consideration," leaving the issue to case-by-case analysis. An early much cited opinion said that withdrawal is mandatory only where "substantial and material consideration" of non-bankruptcy federal statutes "is necessary for the *resolution* of a case or proceeding." *In re White Motor Corp.*, 42 B.R. 693, 703, 705 (N.D. Ohio 1984). More recently the Second Circuit has said that § 157(d) mandates withdrawal to the district court "of cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir.1991) (citing *In re Johns–Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y.1986)). Even matters falling within the bankruptcy court's "core" jurisdiction under § 157(b)(1) and (2) must upon timely motion be withdrawn under § 157(d) "if they require the bankruptcy court to substantially interpret federal statutes which affect interstate commerce." *Id.* While the Second Circuit's statements in *Exxon* were not necessary to the decision, they are nonetheless instructive, given the source.

The case at bar presents the question whether the Trustee's effort to recover a preferential payment from PBGC under § 547 of the Bankruptcy Code "requires consideration" of the IRC, ERISA, or both. The parties take predictably opposing views. PBGC says that the Bankruptcy Code and these two other federal statutes are inextricably intertwined, presenting unprecedented questions of Byzantine complexity. The Trustee says that the Internal Revenue Code and ERISA are really not involved at all, and to the extent they may be, the questions are of childlike simplicity.

I need not fully accept PBGC's characterizations to conclude, in the words of the Second Circuit in *Exxon*, that resolution of the Trustee's adversary proceeding against PBGC would require Chief Judge Lifland "to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."

The question of whether or not the bankruptcy court judge would be required to do so must be considered in the context of the Trustee's amended complaint, which he filed as part of his opposition to PBGC's petition for withdrawal. At oral argument counsel for PBGC regarded that amended pleading as a transparent (and unsuccessful) effort to escape, at least partially, the thrust of the petition. Tr. 12. Counsel for Trustee characterized the amended complaint as an effort "to crystallize the issues." Tr. 16. Specifically, the original complaint included a demand to recover monies that had been paid directly by Eastern to PBGC in the form of certain insurance premiums. The amended complaint drops that demand, and seeks only to recover the contributions Eastern made to its plans during the 90 days preceding the bankruptcy. Such payments, the Trustee alleges, were made to the plans on account of antecedent debts and at a time while Eastern was insolvent, thereby qualifying the payments as avoidable preferences under 11 U.S.C. § 547. *See* Amended Complaint at ¶¶ 9–15.

In asserting its claim against PBGC, the Trustee relies upon 11 U.S.C. § 550(a)(1), which provides that the Trustee may recover an avoidable preference from "the initial transferee of such transfer *or* the entity for whose benefit such transfer was made" (emphasis added); and upon § 547(b)(1), which provides that the "trustee may avoid any transfer of property of the debtor (1) to or for the benefit of a creditor ..." The Trustee at bar argues that the "benefit" to PBGC "is determined by the reduction of the PBGC's obligation to make up any deficiency in assets of the plans from its own funds." Brief at 9. That obligation, of course, derives from ERISA's statutory scheme.

In attacking the Trustee's premises, taken from the Bankruptcy Code, PBGC relies upon provisions in the IRC and ERISA.

Thus PBGC argues that Eastern's contributions to the plans were not made "for the benefit" of PBGC. PBGC points out that Eastern made those payments in order to satisfy the conditions of the waivers previously granted by the IRS, and to avoid the imposition of large sums in excise taxes payable by Eastern. In other words, given the interaction of ERISA and the IRC, these payments should be regarded as for the benefit of Eastern, not PBGC. Any benefit to PBGC, the agency argues, is too indirect and attenuated to qualify under 11 U.S.C. § 550(a)(1). That is because members of Eastern's controlled group, not PBGC, would have been liable for these payments had Eastern not made them, *see* IRC § 412(c)(11); 29 U.S.C. § 1082(c)(11); and even if Eastern's payments may have ultimately reduced the agency's liability to plan participants, other portions of the payments have inured to the benefit of plan participants in the form of estimated nonguaranteed benefits being paid pursuant to section 4044 of ERISA, 29 U.S.C. § 1344.

PBGC also challenges its asserted status as "creditor" of Eastern within the meaning of 11 U.S.C. § 547(b)(1) at the time of the payments at issue. PBGC points out that under section 4062 of ERISA, 29 U.S.C. § 1362, Eastern became indebted to PBGC only upon plan termination. 29 U.S.C. § 1362, that provision in ERISA's statutory scheme declaring the liability of employers to PBGC, provides that it applies "to any employer who maintained a single-employer plan at the time it was terminated ..." Interpreting that section, the Sixth Circuit has said: "The liability of the employer under 29 U.S.C. § 1362 springs from rather than ceases upon plan termination." *Pension Benefit Guarantee Corporation v. Alloytek, Inc.,* 924 F.2d 620, 626 (6th Cir.1991). I am aware of no Second Circuit authority to the contrary. From this proposition, PBGC argues at bar that it cannot be regarded as a "creditor" of Eastern at the time Eastern made the payments at issue to the plans, because those payments were made over one year before the plans terminated and PBGC became Eastern's "creditor" for ERISA purposes.

PBGC also argues that recovery by the Trustee of these payments for the benefit of Eastern's estate in bankruptcy would fly in the face of section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1), which provides that "the assets of a plan shall never inure to the benefit of any employer." In similar vein, IRC § 401(a)(2) provides that for a pension to remain tax-qualified, it must be "impossible ... for any part of the corpus or income ... to be used for, or diverted to, purposes other than for the exclusive benefit of [Eastern's] employees or their beneficiaries ..." From this proposition PBGC rather breathlessly parades the horrible concept that any ruling requiring plan assets to be turned over to the Trustee (as in this adversary proceeding to recover an avoidable preference) "could cause the Plans to lose retroactively their tax-qualified status, thereby creating huge tax liabilities for thousands of Eastern's former employees." (citing Internal Revenue Code § 402) Main Brief at 14.

In short, PBGC contends that the proper resolution of the Trustee's claim against it requires consideration of the interaction between the Bankruptcy Code, ERISA, and the IRC in a number of significant ways. That necessity is emphasized, PBGC contends, by the Supreme Court's recent ruling requiring a construction of ERISA within the bankruptcy context that "minimizes the possibility that creditors will engage in strategic manipulation of the bankruptcy laws in order to gain access to otherwise inaccessible funds." *Patterson v. Shumate,* —— U.S. ——, ——, 112 S.Ct. 2242, 2250, 119 L.Ed.2d 519 (1992).

The Trustee professes himself to be totally unimpressed by all these issues. In his view, this adversary proceeding involves but one of 170 allegedly preferential payments by Eastern the bankruptcy court is presently considering, resolvable like them by reference to bankruptcy law. In addition, the Trustee stresses PBGC's previously expressed intent to argue that under a prior order of Chief Judge Lifland, the Trustee waived the right to bring this particular adversary proceeding. As the Trustee observes, the interpretation of his

own order falls within the particular competence of the bankruptcy judge.

While I intimate no present view on the merits of either party's contentions, I conclude without difficulty that PBGC's claims of interaction between Title 11, ERISA and the Internal Revenue Code will require "significant interpretation, as opposed to simple application," of those non-bankruptcy federal laws. Accordingly withdrawal of the reference is mandated by 28 U.S.C. § 157(d).

On the question of waiver, I agree with PBGC that it should not be required to give up an available alternative defense in order to invoke § 157(d). The flexibility of alternative pleading is a touchstone of twentieth century legal practice. I will provide for the possible success of PBGC's waiver defense in the conditional order which I will make.

As for further proceedings in the case, I have decided to follow the example of Judge Leisure in *In re Pan Am Corp.*, 133 B.R. 700 (S.D.N.Y.1991), by withdrawing the reference under § 157(d) and then remanding the matter to the bankruptcy court, pursuant to 28 U.S.C. § 157(c)(1), for submission to the district court of proposed findings of fact and conclusions of law. *See Pan Am* at 703. PBGC objects to remand on the ground of delay, since it introduces an additional level of judicial consideration before the case inevitably (in PBGC's view) makes its way to the court of appeals and perhaps even beyond. But I think that Chief Judge Lifland's familiarity with the Eastern bankruptcy, developed over considerable time, creates a judicial ambiance in which remand would be productive. Judge Leisure reached the same conclusion in *Pan Am*, where as here § 157(d) withdrawal was mandated by PBGC claims of significant interaction between the Bankruptcy Code, ERISA and the Internal Revenue Code.

### Conclusion

For the foregoing reasons, this Court hereby conditionally orders that the adversary proceeding herein be withdrawn from the bankruptcy court under 28 U.S.C. § 157(d), and remanded to Chief Bankruptcy Judge Lifland for the submission of proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1).

The withdrawal is conditioned upon Chief Judge Lifland's determination of PBGC's alternative waiver · defense. If PBGC presses that defense and the bankruptcy court sustains it, then the Trustee's attempt to recover Eastern's payments to PBGC will come to an end, and questions of interaction between bankruptcy and non-bankruptcy federal laws would no longer arise. In that event, this Court's order of withdrawal would be itself withdrawn, and the case would proceed in the bankruptcy court.

It is SO ORDERED.