**FRANKLIN SAVINGS ASSOCIATION, a Kansas Savings and Loan Association, and Franklin Savings Corporation, a Kansas Corporation, Plaintiffs,**

**v.**

**OFFICE OF THRIFT SUPERVISION, Director, Department of the Treasury, Defendant.**

No. 92–4196–SAC.
Adv. No. 92–7116.
Related Bankruptcy No. 91–41518–11.

United States District Court,
D. Kansas.

Feb. 17, 1993.

Mark S. Gunnison, McDowell, Rice & Smith, P.C., Overland Park, KS, for plaintiffs.

Thomas J. Segal, Harris Weinstein, Aaron B. Kahn, J. Amanda Machen, Laurie Romanowich, Office of Thrift Supervision, Washington, DC, Joann E. Corpstein, Office of Thrift Supervision, Shawnee Mission, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on several motions. The plaintiff Franklin Savings Corporation ("FSC") moves for a directed reference to bankruptcy court. (Dk. 3). The defendant Office of Thrift Supervision ("OTS") moves to withdraw reference of the adversary action pending in bankruptcy court[1] and to consolidate

---

1. On September 15, 1992, the OTS filed its motion to withdraw in the bankruptcy court. The FSC has responded in opposition, and the OTC has filed a reply brief. The matter is ripe for decision. The bankruptcy court record does not show any action or proceeding on the motion to

that action with this case in the district court. (Dk. 4).

FSC is a Kansas corporation and the record holder of more than ninety percent of the stock in Franklin Savings Association ("FSA"). In February of 1990, the Director of the OTS[2] found (1) that FSA was in an unsafe and unsound condition to transact business; (2) that FSA had incurred and was likely to incur losses that would deplete substantially all of its capital without a reasonable prospect for the capital to be replenished; and (3) that FSA had violated laws or regulations or was in an unsafe condition which was likely to cause insolvency or substantial dissipation of assets or likely to weaken FSA's condition or prejudice the depositors' interests. *Franklin Sav. v. Director, Office of Thrift Super.*, 934 F.2d 1127, 1135 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). On these findings, the Director appointed "not for the purpose of liquidation" the Resolution Trust Corporation ("RTC") as conservator of FSA. *Id.*

In March of 1990, FSC and FSA filed a complaint for the removal of the conserva-

tor challenging the statutory and factual basis for the appointment. After a lengthy bench trial, the district court found that the appointment lacked a factual basis and that the Director acted arbitrarily and capricious. 934 F.2d at 1135–36. The district court ordered the removal of the conservator. The Tenth Circuit stayed that order pending its review on appeal. *Id.* at 1136.

The Tenth Circuit reversed and vacated the district court's decision. It held that the district court should have confined its review of the appointment decision to the information before Director at the time of the appointment. 934 F.2d at 1140. The Tenth Circuit also found from the agency record that the Director's decision to appoint a conservator for FSA was not arbitrary, capricious or an abuse of discretion. *Id.* at 1151.

By order dated July 16, 1992, the Director replaced the RTC as conservator of FSA with the RTC as receiver of FSA for the purpose of liquidation. On August 14, 1992, FSC and FSA filed in this court a complaint for removal of the appointed re-

withdraw, and the bankruptcy judge has not made any written recommendation on the motion. Bankruptcy Rule 5011(a) provides that "[a] motion for withdrawal of a case or proceeding shall be heard by a district judge." The 1987 Advisory Committee Note to this provision reads:

> Section 157(d) permits the district court to order withdrawal on its own motion or the motion of a party. Subdivision (a) of this rule makes it clear that the bankruptcy judge will not conduct hearings on a withdrawal motion. The withdrawal decision is committed exclusively to the district court.

The local rules of this district contemplate that the motion to withdraw will be filed in the bankruptcy court, the bankruptcy judge will make a written recommendation on the motion, and the motion and the recommendation will be forwarded to a district judge who shall decide the motion. D.Kan.Rule 706. The local rule specifies that a "proceeding commenced in or removed to the Bankruptcy Court shall be transferred to the District Court for hearing and trial by a district judge only in accordance with the procedure below." D.Kan.Rule 706. The requirements of D.Kan.Rule 706 are explicit and controlling. The bankruptcy court's recommendation greatly assists the district court in deciding whether the issues are truly deserving of mandatory withdrawal or whether the circum-

stances warrant permissive withdrawal. Though some may think that the procedure found in D.Kan.Rule 706 may not be contemplated by Bankruptcy Rule 5011, *See In re Franklin Sav. Corp.,* 133 B.R. 154, 158 (Bankr. D.Kan.1991), this court believes the procedure is helpful and beneficial. It is for this reason that the court expresses its reluctance to decide the motion without first hearing what the bankruptcy court recommends. Nonetheless, the district court is compelled to bypass the requirement of the bankruptcy court's written recommendation in this instance. Other than the filing of motions, neither case has proceeded because of the pending motion to direct reference and the opposing motion to withdraw reference. These motions must be decided together for the issues in each are intrinsically related. Finally, judicial economy requires that a single judge decide the identical claims in consolidated proceedings.

**2.** In response to what was considered a crisis in the savings and loan industry, Congress enacted Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183–553 (1989) (codified at 12 U.S.C. § 1461 *et seq.*) ("FIRREA"). It created the OTS and a director position vested with broad regulatory and enforcement powers.

ceiver.[3] The plaintiffs allege in pertinent part:

The plaintiffs believe the proper forum for resolution of the issues raised herein is the United States Bankruptcy Court for the District of Kansas where FSC's Chapter 11 Bankruptcy proceeding is currently pending. As such, plaintiffs are also filing this complaint in that court. Plaintiffs have filed this Complaint solely to satisfy the thirty (30)–day requirement out of an abundance of caution.

(Dk. 1 at ¶ 10). On August 14, 1992, the plaintiffs filed the identical suit as an adversary action in the bankruptcy court within FSC's Chapter 11 proceedings.

The plaintiffs now move the district court to direct reference of this suit to the bankruptcy court where the adversary action is pending. The plaintiffs contend the bankruptcy court has jurisdiction pursuant to 28 U.S.C. § 1334 for the action arises in and is related to FSC's bankruptcy case. Since it is nothing more than a "unit of the district court," the plaintiffs maintain that the bankruptcy court may exercise the judicial review authorized under 12 U.S.C. § 1464(d)(2)(E). The OTS opposes the plaintiffs' motion arguing in part that any reference of this action is subject to the mandatory withdrawal provision at 28 U.S.C. § 157(d).

OTS moves to withdraw reference arguing the adversary action qualifies for either or both mandatory withdrawal and permissive withdrawal. The plaintiffs strongly oppose the motion. They contend that the bankruptcy court's jurisdiction is irrefutable, that the action requires no substantial and material consideration of bankruptcy law, and that the action can be resolved through a "straight-forward application of the facts to established legal standards."

If the action pending in bankruptcy court is subject to mandatory withdrawal of reference, then the identical action pending in district court obviously should not be referred to the bankruptcy court. Because this issue may be dispositive of both the motion to direct reference and the motion to withdraw reference, the court will take it up instantly.

■ In an order filed only days ago, this court laid out in some detail the rules governing mandatory withdrawal under § 157(d). In that order, the court also sided with the majority of the courts on the issue whether there must be a substantial and material question of bankruptcy law before withdrawal is mandatory. Since that order has yet to be published or submitted to Lexis or Westlaw, the court will quote the full legal discussion:

The plain wording of § 157(d) mandates withdrawal when the proceeding "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Despite its broad terms, this provision has been narrowly construed by courts who have looked to its legislative history. *In re Lenard,* 124 B.R. 101, 102 (D.Colo.1991). Apprehensive of what could become an "'escape hatch through which most bankruptcy matters [would] be removed to the district courts,'" the courts have elevated the meaning of "consideration" to something more than the mere process of examining, thinking about, or taking into account. *In re White Motor Corp.,* 42 B.R. 693, 700, 704 (N.D.Ohio 1984) (quoting colloquy during House debate (130 Cong.Rec. H1849–50 (daily ed. March 21, 1984)).

The court in *White Motor,* was the first to tackle § 157(d), and it concluded that withdrawal is mandatory "only if [the] court can make an affirmative determination that resolution of the claims will require substantial and material consideration of . . . non-Code statutes." 42 B.R. at 705. Adopting this standard, the courts have reserved mandatory with-

---

**3.** In the complaint, the plaintiffs erroneously allege that 12 U.S.C. § 1464(d)(2)(C) "permits a state-chartered savings and loan association to bring an action for an order requiring removal of a receiver appointed by OTS." (Dk. 1 at ¶ 9).

An association's authority to bring such an action is found at 12 U.S.C. § 1464(d)(2)(E), where the district court's jurisdiction over these actions is also set forth.

drawal to those cases where substantial and material consideration of non-Code federal statutes is necessary for the resolution of the proceeding. *See, e.g., In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2nd Cir.1990), *cert. denied,* [— U.S. ——] 112 S.Ct. 50 [116 L.Ed.2d 28] (1991); *In re Continental Airlines,* 138 B.R. 442, 444–45 (D.Del.1992); *In re Mid America Entertainment Plus, Inc.,* 135 B.R. 419, 421 (D.Kan.1991), *opinion later withdrawn.* The consideration of the non-Code law must entail more than its routine application to the facts. *In re Ionosphere Clubs, Inc.,* 922 F.2d at 995; *In re Coated Sales, Inc.,* 146 B.R. 83, 84 (S.D.N.Y.1992); *In re National Gypsum Co.,* 145 B.R. 539, 541 (N.D.Tex.1992). Withdrawal is required if the bankruptcy court would be called upon to make a significant interpretation of a non-Code federal statute. *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2nd Cir.1991); *Wittes v. Interco Inc.,* 137 B.R. 328, 329 (E.D.Mo.1992). If the non-Code issues can be said to dominate the bankruptcy issues, withdrawal may be mandatory. *In re Lenard,* 124 B.R. at 102; *In re Texaco, Inc.,* 84 B.R. 911, 921 (S.D.N.Y.1988). "[S]ubstantial and material conflicts between the Bankruptcy Code and other federal laws" present another instance warranting mandatory withdrawal. *American Tel. & Tel. Co. v. Chateaugay Corp.,* 88 B.R. 581, 588 (S.D.N.Y.1988); *see In re Continental Airlines,* 138 B.R. at 447.

The burden is on the movant to make a timely motion demonstrating that the proceeding qualifies for mandatory withdrawal. *In re Continental Airlines,* 138 B.R. at 445. It is not enough only to speculate about which issues could arise and whether they will be significant in resolving the proceeding. *Sibarium v. NCNB Texas Nat. Bank,* 107 B.R. 108, 111 (N.D.Tex.1989).

Though the courts unanimously agree on a narrow construction of § 157(d), there is a division on what level of consideration is required of title 11 issues. Several districts have taken the minority view of requiring also a substantial and material consideration of title 11 law. *See, e.g., Brizendine v. Montgomery Ward & Co., Inc.,* 143 B.R. 877, 878–79 (N.D.Ill.1992) (citing 1 Lawrence P. King, ed. *Collier on Bankruptcy* ¶ 3.01 at 3–67, 3–68 (15th ed. 1991)); *In re Carolina Produce Distributors, Inc.,* 110 B.R. 207, 209 (W.D.N.C.1990); *Sibarium v. NCNB Texas Nat. Bank,* 107 B.R. at 111; *In re Anthony Tammaro, Inc.,* 56 B.R. 999, 1004–1006 (D.N.J.1986). These cases read "both title 11 and other law" literally and discount § 157(d) as one of the legislative responses to the problems created by *Marathon. In re Anthony Tammaro, Inc.,* 56 B.R. at 1005–1006. These courts consider "both title 11 and other law" to have meaning only if both bodies of law are given substantial and material consideration in the resolution of the proceeding. *In re Anthony Tammaro, Inc.,* 56 B.R. at 1006. In other words, if the proceeding can be resolved with only routine consideration of the Bankruptcy Code issues, then withdrawal is not mandatory.

The other side, where the majority of the courts have set up camp, believes the substantial and material consideration of a title 11 issue is not a prerequisite to mandatory withdrawal. *In re St. Mary Hosp.,* 115 B.R. 495, 497 (E.D.Pa.1990), *see, e.g., In re Ionosphere Clubs, Inc.,* 142 B.R. 645, 647 (S.D.N.Y.1992); *In re Continental Airlines,* 138 B.R. at 445; *Wittes v. Interco Inc.,* 137 B.R. at 329; *In re Auto Specialties Mfg. Co.,* 134 B.R. 227, 228 (W.D.Mich.1990); *In re Quaker City Gear Works, Inc.,* 128 B.R. 711, 713 (E.D.Pa.1991); *In re Contemporary Lithographers, Inc.,* 127 B.R. 122, 127–28 (M.D.N.C.1991); *Matter of Delaware & Hudson Ry. Co.,* 122 B.R. 887, 892 (D.Del.1991). The purpose of § 157(d) is to take from the bankruptcy courts those matters requiring the application of non-bankruptcy federal statutes affecting interstate commerce and give them to the district courts which have more experience in applying those laws. *In re St. Mary Hosp.,* 115 B.R. at 497; *see In re Johns–Manville Corp.,* 63 B.R. 600, 602 (S.D.N.Y.1986) (Congress intend-

ed the district courts to interpret significant provisions of non-Code federal statutes). Besides being incongruous, the purpose of § 157(d) would be frustrated if substantial and material issues of non-Code law remained in the bankruptcy court merely because the proceeding lacked Code issues of a similar magnitude. *In re Contemporary Lithographers, Inc.*, 127 B.R. at 127–28; *In re St. Mary Hosp.*, 115 B.R. at 497; *see Hatzel & Buehler Inc. v. Orange & Rockland Utilities*, 107 B.R. 34, 38 (D.Del.1989) ("Such a strict interpretation of the law 'would effectively defeat the attempts of the Code to rationalize bankruptcy litigation.'" (quoting *In re Johns–Manville Corp.*, 63 B.R. at 602) (other citations omitted)). The Second Circuit, the only circuit to have discussed § 157(d) in any detail, applied the standard from *White Motor* in looking only to whether substantial and material consideration of non-Code federal statutes were necessary to resolving the proceeding. *In re Ionosphere Clubs, Inc.*, 922 F.2d at 995.

Congress intended complex title 11 issues to remain in the capable and expert hands of bankruptcy judges. *In re White Motor Corp.*, 42 B.R. at 704. Congress also intended to have the significant issues involved in applying other federal statutory schemes withdrawn to the district courts. So, what reason would Congress have for requiring a substantial and material issue of bankruptcy law before allowing the district court to interpret critical provisions of other federal statutes? This question is not answered by the courts in the minority camp. Even a literal reading of a statute should be consistent with and in furtherance of the statute's obvious purpose.[2] The interpretation espoused by the minority camp is inconsistent with and undermines the intent of Congress. A significant issue of non-Code law, intended for the district courts to decide, would not be subject to mandatory withdrawal simply because an accompanying significant issue of Code law, intended for the bankruptcy courts to decide, was not presented.

The "consideration of ... title 11" in § 157(d) could be read as reiterating that this provision is intended to address only those cases which were properly referred to the bankruptcy court in the first instance.[3] Whatever its reasons, Congress, in this court's judgment, was not concerned with the quality or nature of the issues under bankruptcy law when it allowed for mandatory withdrawal. Following the majority view, the court believes it is enough for mandatory withdrawal if the resolution of the proceeding requires consideration of bankruptcy law and the substantial and material consideration of non-bankruptcy federal statutes regulating activities affecting interstate commerce.

[2] "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) (citations omitted). The literal language of a statute is applied unless it would yield "irreconcilable inconsistencies or clearly absurd results that Congress could not have intended." *Resolution Trust Corp. v. Westgate Partners, Ltd.*, 937 F.2d 526, 531 (10th Cir. 1991).

[3] The court in *In re White Motor Corp.* offered this as part of the legislative history to § 157(d):

Unlike the 1978 Act, however, S. 1013 gives the district court far greater control over the handling of all bankruptcy cases and proceedings. Under [the proposal], the district court judge may recall, on its own motion, any case or proceeding referred to the bankruptcy court. Also, a motion for recall of any case or proceeding may be made either by a bankruptcy judge or a party. Recall by the district court is generally discretionary, except that recall is mandatory in two instances—in any proceeding involving a claim or cause of action which is not one arising under title 11; and (2) in any proceeding where the district determines that Federal laws regulating organizations or activities affecting interstate commerce are involved—the committee intends that this second instance of mandatory recall be construed narrowly—basically to cover only those organizations or activities which immediately and directly affect interstate commerce.

42 B.R. at 699 (Senate Report at 16). By including "both" and "Title 11" in § 157(d), Congress may have intended only to emphasize the distinction between the two instances where withdrawal was mandatory.

The court will apply these same rules here.

These cases do not entail the simple or routine application of the law to the

facts. Indeed, the cases cannot be resolved without making a significant interpretation of the Home Owners' Loan Act, as amended by FIRREA. For example, an issue raised in OTS' pending motion to dismiss is whether the Act allows for judicial review of the Director's decision to replace a conservator appointed not for the purpose of liquidation with a receiver appointed for the purpose of liquidation. This issue is one of first impression in the Tenth Circuit.[4] In addition, the plaintiffs not only challenge the statutory authority of the Director to replace a conservator with a receiver but also the statutory and regulatory procedures for doing so. It is beyond real dispute that the court must give substantial and material consideration to a federal statute regulating interstate commerce, specifically 12 U.S.C. § 1464(d)(2), in resolving these cases. The court also believes a serious conflict exists between Code and non-Code law over the bankruptcy court's jurisdiction of an action to remove a receiver brought by the thrift holding company. Pursuant to § 157(d), the adversary action is subject to mandatory withdrawal, and the action pending in district court is inappropriate for direct reference.

█ Because the parties agree the cases are identical, judicial economy is served by consolidating these cases in district court. The court will consider the defendant's motion to dismiss filed only in the district court case to have been filed in both cases and to be ready for decision. The parties can expect a decision on that motion within the next thirty-five days.

IT IS THEREFORE ORDERED that the plaintiff FSC's motion for directed reference to bankruptcy court (Dk. 3) is denied.

IT IS FURTHER ORDERED that the defendant's motion to withdraw reference (Dk. 4) filed in the bankruptcy court's adversary action No. 92–7116 is granted; that this memorandum and order will be filed also in the bankruptcy court; and that the

adversary action will proceed in the district court.

IT IS FURTHER ORDERED that the defendant's motion to consolidate (Dk. 4) is granted.

---

4. In fact, there appears to be only one decision addressing this particular question of statutory interpretation. *Gibraltar Savings v. Ryan,* No. 89–3207–OG, 1990 WL 484155, 1990 U.S.Dist.LEXIS 18386 (D.D.C. July 10, 1990). This decision may be distinguishable to the ex-

tent the Director in that case relied in part on 12 U.S.C. § 1464(d)(2)(E) in replacing the conservator with a receiver. Consequently, the cases *sub judice* may involve an issue of first impression.