**In re U.S. AIRWAYS GROUP, INC., et al., Debtors.**

**No. CIV.A. 03–827–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 13, 2003.

Stephen Warren Nichols, Deckelbaum, Ogens & Raftery Chtd., Bethesda, MD, for Plaintiffs/Movants.

Lawrence E. Rifken, McGuireWoods L.L.P., McLean, VA, for Defendants/Respondents.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this Chapter 11 bankruptcy proceeding, a class of administrative expense claimants seeks a mandatory, or alternatively, a discretionary withdrawal of reference pursuant to 28 U.S.C. § 157(d) on the ground that resolution of a pending motion for summary judgment on their claim to administrative priority status requires consideration of United States' antitrust laws, as well as bankruptcy laws. For the reasons stated from the bench and elucidated here, neither mandatory nor discretionary withdrawal of reference is appropriate in the circumstances at bar.

### I.

On August 11, 2002, U.S. Airways, Inc. and its seven affiliates (collectively, "Debtors") filed voluntary Chapter 11 petitions for reorganization relief in the Bankruptcy Court of the Eastern District of Virginia. The deadline for filing proofs of claim against Debtors was set for November 4, 2002. A timely proof of claim for more than forty billion dollars was filed on September 25, 2002, by a nationwide class of travel agents ("the Class"), certified as a class of plaintiffs in an ongoing antitrust suit against a number of airlines, including U.S. Airways. In this suit, pending in the

United States District Court for the Eastern District of North Carolina, captioned *Hall, et al. v. United Airlines, Inc. et al.* (Case No. 7–00 CV–123–BR(1)), the Class alleges that U.S. Airways and other defendants conspired to reduce, divert to themselves, and ultimately eliminate commissions paid to travel agents in this country, in violation of § 1 of the Sherman Act. 15 U.S.C. § 1. This conspiracy, according to the Class, commenced in 1996 and by March 2002 had succeeded in eliminating altogether commissions formerly paid to travel agents. The exact amount of the Class's proof of claim against Debtors— $40,045,366,899.00—represents a trebling of actual damages alleged by the Class in the antitrust suit. *See In re US Airways Group, Inc., et al.,* Case No. 02–83984– SSM (Bankr.E.D.Va. March 18, 2003) (Proof of Claim, October 25, 2002, Claim No.: 1600).

Debtors filed their Joint Plan of Reorganization ("Plan") and related Disclosure Statement on December 20, 2002, and on or about that date, served the Class with notice of this filing and of a hearing to consider approval of the Debtors' Disclosure Statement. The Disclosure Statement, which contains Debtors' *pro forma* financial projections for the years 2003 through 2009, includes no provision for travel-agent commissions. The Class did not object to the Disclosure Statement, which the bankruptcy court approved on January 17, 2003. *See In re US Airways Group, Inc., et al.,* Case No. 02–83984– SSM (Bankr.E.D.Va. January 17, 2003) (Order Approving Disclosure Statement and Fixing Hearing on Confirmation). Thereafter, on January 31, the Class was served with a copy of the Plan, the Disclosure Statement, notice of hearing to con-

firm the Plan, and notice of its non-voting status. Again, the Class did not object; indeed, the Class chose not to appear at, or participate in, the confirmation hearing. Following the hearing, the bankruptcy court, on March 18, 2003, entered its findings of fact, conclusions of law, and order approving and confirming the Plan. *See In re US Airways Group, Inc., et al.,* Case No. 02–83984–SSM (Bankr.E.D.Va. March 18, 2003) (Findings of Fact, Conclusions of Law, and Order). In its Confirmation Order, the bankruptcy court found that the Plan satisfied statutory requirements. *Id.* Significantly, the Class did not seek to stay, vacate or appeal the Plan. On March 31, 2003, the Plan became effective and Debtors promptly began to enter into numerous transactions with third parties, including (i) closing on a $240 billion dollar equity investment; (ii) assuming or rejecting thousands of executory contracts and unexpired leases; (iii) ratifying collective bargaining and restructuring agreements with a number of unions; (iv) distributing new restricted stock warrants; (v) curing millions of dollars of pre-petition defaults; (vi) paying large numbers of unsecured pre-petition claims; and (vii) entering into financial agreements to restructure Debtors' fleet of aircraft.

On or about April 8, 2003, all scheduled creditors, including the Class, were served with Notice of Entry of an Order confirming Debtors' First Amended Plan of Reorganization, which established a bar date of May 15, 2003, for filing claims for administrative expenses pursuant to § 503(b) of the Bankruptcy Code.[1] Prior to this deadline, the Class, on May 13, 2003, filed a $225 million claim against Debtors for administrative expenses. In essence, the Class claimed that commissions that Debt-

---

1. Administrative expenses, which enjoy priority status over other debts and obligations of the estate, are defined by 11 U.S.C. § 503 and, in pertinent part, include the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

ors would have paid the Class but for the alleged anti-competitive conspiracy were properly characterized as administrative expenses incurred by the Class for the benefit of Debtors' estate. Unlike the claim for treble damages in the pending class-action suit, the Class limited the administrative claim demand to Class members' alleged lost revenues for the period commencing after Debtors' filing of the petition for bankruptcy.

Soon after filing their administrative claim, the Class, pursuant to 28 U.S.C. § 157(d),[2] filed a motion with the bankruptcy court to withdraw the reference with respect to this administrative claim on the ground that determining the claim's status as an administrative expense would require the bankruptcy court to examine federal law outside the Bankruptcy Code.[3] Debtors filed both a timely objection to the administrative claim and an opposition to the withdrawal of reference motion. On June 25, the Class's motion to withdraw reference was filed in the district court.

Two days later, on June 27, 2003, Debtors moved in bankruptcy court for summary judgment on the Class's administrative claims and noticed this motion for hearing on July 17, 2003. Debtors presented three grounds for summary judgment on their objection to the Class's administrative priority claim: (i) the Class is precluded by the principles of *res judicata* and waiver from prosecuting its claim as an administrative expense claim; (ii) the claim does not meet the standards for treatment as an administrative claim because it is not beneficial to the estate; and (iii) the claim is not entitled to administrative priority because the facts and events underlying the alleged expense all occurred pre-petition, thereby making it a pre-petition claim.

The Class, in turn, noticed a hearing on its motion for withdrawal of reference for July 11, 2003, thereby seeking to have the withdrawal of reference motion heard and resolved before the hearing in bankruptcy court on the Debtors' motion for summary judgment.

The parties' positions may be succinctly summarized as follows. The Class argues that the disposition of the summary judgment motion on its administrative claim will require both consideration and interpretation of United States antitrust laws, thereby triggering the mandatory withdrawal in § 157(d). And, with respect to § 157(d)'s provision for discretionary withdrawal of reference, the Class argues, *inter alia*, that withdrawal of the reference here would serve judicial economy by preventing the Class's antitrust-based administrative priority claim from being adjudicated twice, first before the bankruptcy court and then by the district court on appeal. In response, Debtors argue that withdrawal of reference should be denied because the upcoming motion for summary

---

**2.** The statute provides, in pertinent part:
(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

**3.** Although withdrawal of reference is a matter solely within the jurisdiction of the district court, *see* Rule 5011(a), Fed. R. Bank. P.; 28 U.S.C. § 157(d), the bankruptcy court's Local Rules require that motions to withdraw be filed initially in the bankruptcy court in order to allow the bankruptcy court's clerk's office to assemble the file required by the district court for consideration of the motion. *See* Local Rule 5011–1, Bankr.E.D. Va.

judgment on the administrative priority claim can and should be determined solely on the grounds of bankruptcy law.[4] With respect to discretionary withdrawal, Debtors argue that the pertinent factors, including economies and expedition of the process, weigh against withdrawal.

Following full briefing and oral argument, the motion for withdrawal of reference on both mandatory and discretionary grounds was denied in a ruling from the bench. This memorandum sets forth more fully the reasons for that ruling.

## II.

■ Federal district courts, pursuant to 28 U.S.C. § 1334, exercise original jurisdiction over all bankruptcy matters, but are enabled by statute to refer these proceedings to subordinate bankruptcy courts as a matter of course. *See* 28 U.S.C. § 1334(a) & (b); *In the Matter of: The Administration of the Bankruptcy Courts and Reference of Bankruptcy Cases and Proceedings to the Bankruptcy Judges of this District* (E.D.Va. August 15, 1984) (Order). Yet, pursuant to 28 U.S.C. § 157(d), district courts may, and in certain instances must, withdraw reference of such proceedings in whole or in part. More specifically, withdrawal of reference is mandatory when "resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.* By contrast, discretionary withdrawal may be or-

dered simply for "cause shown." *Id.* But the burden of demonstrating both mandatory and discretionary withdrawal is on the movant. *See In the Matter of Vicars Ins. Agency, Inc.,* 96 F.3d 949, 955 (7th Cir. 1996) (mandatory withdrawal); *In re Envisionet Computer Services, Inc.,* 276 B.R. 1, 4 (D.Me.2002) (discretionary withdrawal).

Because the Class contends that withdrawal of reference is warranted on both mandatory and discretionary grounds, each ground is separately addressed.

### A. *Mandatory Withdrawal*

■ Because the statute clearly makes mandatory withdrawal turn on whether "resolution" of the bankruptcy proceeding "requires consideration" of federal laws other than Title 11, the parties correctly focus their arguments on whether the "resolution" of the Debtor's pending motion for summary judgment attacking the Class's administrative claim "requires consideration" of antitrust laws.

There is no controlling Fourth Circuit precedent construing § 157(d). And, while courts elsewhere have done so, they are not uniform in their construction of this statutory phrase. There is, however, broad judicial agreement that the phrase "requires consideration" cannot be given its broadest possible reading—as in merely to contemplate or give attention—for to read the phrase this broadly would trivial-

---

4. Debtors also suggest that the withdrawal of reference motion constitutes an illegitimate effort to preserve a spurious claim to priority status from review by the bankruptcy court. Debtors contend that the Class's entire monetary claim against Debtors is properly a prepetition, unsecured claim. According to Debtors, the Class accepted the status of an unsecured debtor until the moment that third-party creditors extended billions of dollars in credit to revivify the airline and its affiliates.

And, Debtors argue, once the reorganization was made possible by this extension of credit, the Class attempted to secure more advantageous treatment than other unsecured creditors by asserting a claim to administrative priority status. It is unnecessary to consider or decide the accuracy of Debtors' views on the Class's motive or strategy as they are irrelevant to the resolution of the questions presented.

ize the mandatory withdrawal requirement and limit drastically the bankruptcy court's jurisdiction. *See, e.g., Vicars*, 96 F.3d at 952 (noting that the "broadest literal reading" of the "consideration" clause would "eviscerate much of the work of the bankruptcy court") (quoting *In re Adelphi Institute, Inc.*, 112 B.R. 534, 536 (S.D.N.Y. 1990)); *In re Johns–Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y.1986) (holding that § 157(d) must be construed "narrowly, so that it does not become an 'escape hatch' for matters properly before the bankruptcy court").

Some courts narrow the scope of § 157(d)'s "consideration" clause by construing the term "consideration" to require "substantial and material consideration" of non-bankruptcy federal law.[5] Yet, this view is unhelpful; it begs the question, leaving unanswered what is "substantial and material" consideration. This construction also finds little warrant in the text of the statute[6] and, in any event, has not led to consistent application of the mandatory withdrawal requirement.[7]

The majority approach, which was developed in the Second Circuit and has been adopted by the Seventh Circuit, holds that "Congress would have intended" to have cases withdrawn from the bankruptcy court and decided by a district judge only when the cases involved "issues requiring significant *interpretation* of [non-bankruptcy] federal laws," not "the straightforward application of a federal statute to a particular set of facts."[8] Although this approach is the majority approach, other courts have used other tests to determine whether withdrawal is mandated by the

---

5. *See, e.g., Vicars*, 96 F.3d at 952 (adopting the "substantial and material" gloss and noting that it is the majority rule); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir.1990) (holding that mandatory withdrawal is "reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary"); *In re White Motor Corp.*, 42 B.R. 703, 704 (N.D.Ohio 1984) (same).

6. For this reason, at least one district court within the Fourth Circuit has rejected the "substantial and material" interpretation altogether. *See In re Contemporary Lithographers, Inc.*, 127 B.R. 122 (M.D.N.C.1991). That court held that "an unclear or complex federal statute" is not a prerequisite to mandatory withdrawal under § 157(d) and rejected the "significant interpretation" requirement. *Id.* at 127–28. Instead, that court held that mandatory withdrawal applies whenever "a Title 11 case presents a non-Title 11 federal question which will *affect the outcome of the proceeding." Id.* at 127 (emphasis added). *But see, e.g., In re Merryweather Importers, Inc.*, 179 B.R. 61, 62 (D.Md.1995) (holding that mere consideration is insufficient, that "the great weight of the case law interpreting § 157(d)" requires a narrower reading, and that the consideration must be "substantial and material").

7. *Compare, e.g., In re IQ Telecommunications, Inc.*, 70 B.R. 742, 745 (N.D.Ill.1987) (requiring mandatory withdrawal under the substantial and material standard when an adversarial proceeding in bankruptcy court "cannot be resolved by merely incidental reference to non-Code federal laws"); *with Vicars*, 96 F.3d at 954–55 (holding that claims which "might involve novel issues" of non-bankruptcy federal law, not settled in the circuit, do not necessarily trigger "substantial and material consideration," and denying mandatory withdrawal).

8. *See Johns–Manville*, 63 B.R. at 602 (setting forth the application/interpretation distinction) (emphasis in original); *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (endorsing the *Johns–Manville* "significant interpretation" versus "straightforward application" approach); *In the Matter of Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir.1996) (same); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 996 (2d Cir.1990) (holding that mandatory withdrawal is not required where "resolution" requires "the routine application" of non-bankruptcy federal law, not "substantial consideration" of it).

statute. For example, one district court held that mandatory withdrawal is required "when complicated interpretive issues, often of first impression, have been raised under non-Title 11 federal laws or when there is a conflict between the bankruptcy and other federal law," provided the resolution of such issues is "essential to the dispute." *In re TPI Int'l Airways,* 222 B.R. 663, 667 (S.D.Ga.1998) (citations omitted).[9] And, a few courts read § 157(d) literally to hold that withdrawal is mandatory only when resolution of the proceedings requires consideration of *both* bankruptcy law and non-bankruptcy federal law.[10]

 In the absence of binding Fourth Circuit precedent, the construction of § 157(d)'s mandatory withdrawal provision must be guided by the statute's plain language and purpose. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (holding that "statutory analysis begins with the language of the statute"); *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (holding that statutory ambiguities may be resolved by referencing a statute's purpose). In this regard, it is true, as some courts have noted, that the statutory terms "resolution," "consideration," and "requires" are not themselves unambiguous. *See Vicars,* 96 F.3d at 952. But the key to the interpretive effort is that these terms must be read together, the presence of each term informing the sense in which the other is used. This leads to the conclusion that the judicial consensus that "consideration" means more than merely "give attention to or contemplate" is surely correct; because the "consideration" of non-bankruptcy federal law that triggers mandatory withdrawal is that "required" for "*resolution*" of the proceeding, it follows, at a minimum, that mandatory withdrawal is not warranted unless the bankruptcy court must *decide* a question under non-bankruptcy federal law in order to *resolve* the proceeding. In other words, an issue or question of non-bankruptcy federal law must be essential or material to the disposition of the bankruptcy proceeding before withdrawal of the reference is mandated. This much is clear from the statute's plain language. Less clear is whether, as some courts hold,[11] the material non-bankruptcy federal law issue presented must be novel, difficult, or undecided in the circuit. Although it is doubtful that the non-bankruptcy is-

---

**9.** *See also Franklin Savings Association v. Office of Thrift Supervision,* 150 B.R. 976, 980 (D.Kan.1993) (stating the majority rule, but also holding that mandatory withdrawal is warranted if "non-Code issues can be said to dominate the bankruptcy issues," or if there is "[s]ubstantial and material conflicts between the Bankruptcy Code and other federal laws"); *Educational Credit Management Corp. v. Barnes,* 259 B.R. 328, 329 (S.D.Ind.2001) (stating the majority rule, but also holding that the presence of a constitutional challenge to a regulation is itself sufficient to require mandatory withdrawal).

**10.** *See, e.g., Brizendine v. Montgomery Ward & Co., Inc.,* 143 B.R. 877, 878–79 (N.D.Ill.1992) (denying mandatory withdrawal under § 157(d) because no consideration of Title 11

law was necessary to resolve the proceeding); *In re Anthony Tammaro, Inc.,* 56 B.R. 999, 1006 (D.N.J.1986) (holding that "the reference to Title 11 was included and must be given meaning," and that withdrawal is mandated only "if the resolution of the proceeding requires consideration of *both* Title 11 and non-Code federal law"). *But see Franklin Savings,* 150 B.R. at 980 (noting that the minority approach is incongruous and frustrates the purpose of § 157(d) by requiring that cases with "substantial and material issues of non-Code law" nonetheless stay in the bankruptcy court because they "lack[ ] Code issues of a similar magnitude"); *In re St. Mary Hosp.,* 115 B.R. 495, 497 (E.D.Pa.1990) (same).

**11.** *See supra* n. 7.

sue must be any of these, this further question need not be reached and decided here for it is not presented by the facts at bar; in this case no non-bankruptcy federal law questions must be decided in order to resolve the Debtors' summary judgment attack on the Class's administrative claim.

In oral argument, counsel for the Class correctly conceded that bankruptcy law alone controls the disposition of Debtor's summary judgment motion on the first and second grounds. The first summary judgment ground—whether the Class's claim for lost commissions since the filing of bankruptcy is a valid administrative claim under 11 U.S.C. § 503—is a question about the scope and application of § 503 and hence governed solely by federal bankruptcy law.[12] Similarly, the second summary judgment ground—whether the Class's claim is barred by principles of *res judicata* and waiver—is also controlled by federal bankruptcy law.[13]

While conceding this much, the Class argues that the bankruptcy court must nonetheless necessarily consider antitrust law in order to adjudicate Debtors' third ground of objection, namely that the Class claim is disqualified as an administrative cost or expense because the alleged facts and events underlying the expense all occurred pre-petition.[14] According to the class, under settled antitrust principles, the Debtors' violations of the Sherman Act, and consequently the unlawful profits captured by the Debtors' estate, constitute transactions that continued to occur post-petition with each sale of a ticket without the commission.

■ The Class's argument in this respect fails, as it confuses the substantive basis for the administrative claim with the more pertinent issue of when the claim arose. The point is simply this: *Whether* a claim arises requires consideration of the substantive law from which the claim arises, not of the bankruptcy code itself;[15] but *when* a claim arises for bankruptcy purposes is determined according to bankruptcy law, not according to the substantive law creating the claim. Fourth Circuit precedent on this point is legion.[16] It follows, therefore, that resolving the ques-

---

**12.** See *In re Merry–Go–Round Enterprises, Inc.*, 180 F.3d 149, 155–156 (4th Cir.1999) (examining provisions of Title 11 and two lines of Title 11 cases to determine whether certain rents were "beneficial" in order to qualify as administrative expenses); *In re Anderberg–Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir.1997) ("A claim for an administrative expense pursuant to section 503(b) is a core proceeding for which the bankruptcy court has jurisdiction under 28 U.S.C. § 157(b)(2).").

**13.** See *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1314–17 (4th Cir.1996) (holding that the confirmation order constitutes a final judgment on the merits with *res judicata* effect and bars claims at issue); *Id.* at 1317–19 (holding that equitable estoppel and waiver apply in the bankruptcy context and also bar the claims).

**14.** Neither party contests the established principle that administrative expenses claims

must "arise out of a post-petition transaction between the creditor and the debtor-in-possession." *In re Stewart Foods, Inc.*, 64 F.3d 141, 145 n. 2 (4th Cir.1995) (citations omitted).

**15.** See *In re Remington Rand Corp.*, 836 F.2d 825, 830 (3d Cir.1988) (holding that "unless state or federal law independently creates obligations, the bankruptcy court is not presented with a claim to either recognize or reject"); *In re Credit Indus. Corp.*, 366 F.2d 402, 407 (2d Cir.1966) (holding that "[b]ankruptcy serves only as a forum for the recognition of rights already acquired").

**16.** See *Merry–Go–Round Enterprises*, 180 F.3d at 156–57 (applying bankruptcy law to question whether, for the purposes of an administrative priority claim, damages resulting from a breach of a post-petition lease arose from transaction occurring post-petition); *Adventure Resources Inc. v. Holland*, 137 F.3d 786, 794–95 & n. 11 (4th Cir.1998) (applying bank-

tion whether the claim is pre– or post-petition turns on principles of bankruptcy law, not antitrust law. Put differently, even assuming, *arguendo*, that the Class has a valid antitrust claim based on Debtors' post-petitions denials of commissions, federal bankruptcy law alone determines whether such post-petition denials are proper administrative claims and, if so, when such claims arose. It further follows that § 157(d)'s mandatory withdrawal of reference provision is inapplicable at this time [17] because the Debtors' pending summary judgment motion may be resolved without "consideration" of non-bankruptcy federal law.

### B. Discretionary Withdrawal

■■■ In addition to mandatory withdrawal of a reference in certain circum-stances, § 157(d) also authorizes the withdrawal of reference "for cause shown" as a matter of judicial discretion. "Cause" is not statutorily defined and the parties have cited no controlling Fourth Circuit guidance on the meaning of the "cause" in this context. Other circuits, however, are in substantial agreement on the factors that should be weighed in considering a discretionary withdrawal of reference. These factors include: (i) whether the proceeding is core or non-core,[18] (ii) the uniform administration of bankruptcy proceedings, (iii) expediting the bankruptcy process and promoting judicial economy, (iv) the efficient use of debtors' and creditors' resources, (v) the reduction of forum shopping, and (vi) the preservation of the right to a jury trial.[19] Some courts view the core/non-core factor as a threshold

---

ruptcy law to question of when liabilities under the Coal Act accrue as priority taxes under the Code); *Butler v. NationsBank, N.A.*, 58 F.3d 1022, 1029 (4th Cir.1995) (holding that "to determine when a claim arises for bankruptcy purposes, reference is to be made to federal bankruptcy law rather than to state law"); *Grady v. A.H. Robins Co.*, 839 F.2d 198, 201 (4th Cir.1988) (holding that "claim accrual for bankruptcy purposes must be determined in light of bankruptcy law and not state law").

Other circuits also follow this principle. *See, e.g., In re BCE West, L.P.*, 319 F.3d 1166, 1172–73 (9th Cir.2003) (applying bankruptcy law to determine that an administrative expense claim for attorneys' fees incurred post-petition fails because, under the Code, these post-petition costs arose out of pre-petition contractual agreement); *In re National Gypsum Co.*, 139 B.R. 397, 405 (N.D.Tex.1992) (examining CERCLA claims and holding that "[w]hile non-bankruptcy law governs the existence of a claim under the Code, it is not dispositive of the time at which a claim arises under the Code."). *But see In re Chateaugay Corp.*, 86 B.R. 33, 38–39 (S.D.N.Y.1987) (determining when a claim arises in bankruptcy proceedings requires consideration of multiple, concrete provisions of ERISA and related federal law).

**17.** This temporal qualification makes clear that the withdrawal of reference issue decided here focuses only on the questions material to the resolution of Debtors' pending summary judgment motion. Not addressed here is whether mandatory or discretionary withdrawal of the reference might be warranted in the event of some future dispute regarding the Class's administrative claim, should that claim survive summary judgment.

**18.** *See* 28 U.S.C. § 157(b)(2) (providing a non-exclusive list of what constitutes a core proceeding). In general, "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). A bankruptcy judge may hear and determine all core proceedings, but must submit to the district court proposed findings of fact and conclusions of law regarding a non-core proceeding, unless the parties consent to a referral of the non-core proceeding for determination by the bankruptcy judge. *See* 28 U.S.C. § 157(b)(1) & (c)(1)-(2).

**19.** *See Security Farms v. Int'l Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999 (9th Cir.1997) ("the efficient use of judicial resources, delay and cost to the

question that must be answered before analysis may proceed and is determinative of most of the other factors,[20] while other courts simply place substantial weight on the core/non-core factor.[21] The better view is that discretionary withdrawal of reference should be determined on a case-by-case basis by weighing all the factors presented in a particular case, including the core/non-core distinction.

■ In this case, the calculus of all the factors points persuasively against discretionary withdrawal of the reference. Because the issues to be decided in resolving Debtors' pending summary judgment motion are all federal bankruptcy law core matters, they are particularly well suited to be addressed and resolved in the first instance by the bankruptcy court with its special competence and expertise in such issues.[22] Thus, keeping the reference in place in this case at this time both expedites the process[23] and helps ensure the uniform administration of bankruptcy proceedings. The Class's arguments to the contrary are unpersuasive as they are premised on the mistaken notion that the Debtors' pending summary judgment motion implications significant issues of non-

parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors"); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993) ("whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law"); *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir.1990) ("promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process") (citing *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir.1985)); *see also In re Merryweather Importers, Inc.*, 179 B.R. 61, 63 (D.Md.1995) ("the uniformity of bankruptcy administration, forum shopping and confusion of fora, conservation of creditor and debtor resources, expediency of the bankruptcy proceeding, and the fact that only equitable issues are posed, not requiring a jury trial").

20. *See Orion Pictures*, 4 F.3d at 1101 (holding that a district court considering whether to withdraw the reference "should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn").

21. *See Security Farms*, 124 F.3d at 1008 (holding that discretionary withdrawal served efficiency "because non-core issues predominate"); *In Re Coe–Truman Technologies, Inc.*, 214 B.R. 183, 187 (N.D.Ill.1997) ("The most important of these factors is whether the ad-

versary proceeding sought to be withdrawn is core or non-core").

22. The Class argues that the likelihood of an appeal from any bankruptcy court decision on the pending summary judgment motion militates in favor of withdrawing the reference so the parties will not be required to litigate this matter twice. This argument is unconvincing; it proves too much; if accepted it would lead to the nonsensical conclusion that all references should be withdrawn since all dispositive matters resolved by the bankruptcy court may be appealed to the district court. *See* 28 U.S.C. § 158(a). Leaving the reference in place in this case is supported by the essential *raison d'etre* of the bankruptcy court system, namely the desirability of having courts with the experience and special competence to address bankruptcy issues expeditiously and efficiently. *See In re Jaritz Industries, Ltd.*, 151 F.3d 93, 107 (3d Cir.1998) (holding that "the purpose of establishing a nationwide bankruptcy system is to alleviate the district courts of excessive workloads and to provide a system where judges with experience and expertise in bankruptcy matters can handle bankruptcy claims") (citing *In re Kaiser*, 722 F.2d 1574, 1581 (2d Cir.1983)).

23. The Class asserts that expediting the bankruptcy process does not stand in the way of discretionary withdrawal because the Plan has already been confirmed. This assertion overlooks the fact that the pendency of an unresolved $225 million administrative claim plainly has a continuing impact on the bankruptcy process.

bankruptcy federal antitrust law.[24] In the final analysis, the point is simply that where, as here, only issues of federal bankruptcy law are cited as a basis for discretionary withdrawal, the factors pertinent to the discretionary withdrawal question weigh decisively against withdrawing the reference. *See In re Chateaugay Corp.,* 193 B.R. 669, 675 (S.D.N.Y.1996) (holding that "[o]n a motion to withdraw, allowing core matters to remain in the bankruptcy court ... promotes efficiency and uniformity of bankruptcy law").

An appropriate order has issued.

---

**24.** The case the Class cites in support of its argument for discretionary withdrawal on grounds of efficiency is *In re Homeland Stores, Inc.,* 204 B.R. 427 (D.Del.1997), which does indeed involve matters of non-bankruptcy federal law. *See id.* at 434 (noting that action did not involve core bankruptcy matters and, "although brought by a party in bankruptcy proceedings, could just as well have been initiated in the district court"). Such is not the case here.