Michelle L. VIEIRA, as Trustee for the Estate of Worldwide Wholesale Lumber, Inc. (d/b/a Veracor Wood Products International), Plaintiff,

v.

AGM, II, LLC, Defendant.

C.A. No. 2:06–3111–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 22, 2007.

Richard Lee Tapp, Jr., Suzi Grigg, Nexsen Pruet Jacobs Pollard and Robinson, Charleston, SC, for Plaintiff.

### ORDER

DUFFY, District Judge.

This matter is before the court upon Plaintiff Michelle L. Vieira's ("Plaintiff," "Vieira," or "Trustee") Motion for Withdrawal of Reference. Specifically, Plaintiff seeks to withdraw the reference of the bankruptcy case *In re: Worldwide Wholesale Lumber, Inc., d/b/a Veracor Wood Products International*, No. 06–01499–jw, 364 B.R. 197,[1] so that the case may be heard by this court.[2] For the reasons set forth herein, the court denies Plaintiff's motion.

### BACKGROUND

On April 12, 2006, several of Worldwide Wholesale Lumber, Inc.'s (d/b/a Veracor Wood Products International) ("Debtor") creditors filed an involuntary petition against Debtor for relief under Chapter 7

of the Bankruptcy Code. Plaintiff is serving as Trustee for Debtor. Debtor previously operated a business headquartered in Mt. Pleasant, South Carolina, which consisted of purchasing and importing plywood from foreign countries and reselling the plywood on the domestic market. AGM, II, LLC ("AGM") entered into various financial agreements with Debtor whereby AGM provided financing to Debtor based in Debtor's accounts receivable and inventory.

In her capacity as Trustee, Vieira brought suit against AGM in this court on October 31, 2006 and listed the following causes of action: (1) Breach of Fiduciary Duty to Other Creditors—Violation of the Trust Fund Doctrine; (2) Breach of Fiduciary Duty to the Debtor; (3) Constructive Trust; and (4) Accounting. In the complaint, Plaintiff alleges that prior to the bankruptcy filing, AGM inserted Orlando Figeroa as a director onto Debtor's Board of Directors. (Compl.¶ 7.) Plaintiff asserts that Figeroa asserted control over the Board and "made certain decisions including the decision not to seek Chapter 11 protection which, in turn, resulted in the involuntary filing under Chapter 7 of the Bankruptcy Code." (Compl.¶ 7.) The complaint further states, "The Trustee is further informed and believes that AGM, through its agents, amended the Debtor's corporate charter to provide that an outside director has a veto power over the Debtor prior to the filing of the bankruptcy." (Compl.¶ 8.) Plaintiff also alleges

1. In this Order, the court will refer to the case pending before the Bankruptcy Court as the "Bankruptcy Case."

2. This court held a hearing on the Motion to Withdraw Reference on December 13, 2006. At the hearing, Plaintiff's counsel, Mr. Tapp, apparently limited the Motion to Withdraw Reference. Mr. Tapp stated,

We're not asking this Court to assume everything in the bankruptcy court. We're

not asking you to hear preferences and all that—all the things that happened in bankruptcy court. We'd just like to have one tribunal decide those issues about their [AGM's] behavior and how much money they either owe us of if you believe them, how much money they're owed. We're just trying for one.

(Hr'g Tr. 5, Dec. 13, 2006.) The court assumes Plaintiff has restricted the motion to the AGM Contested Matter. For a description of the AGM Contested Matter, *see infra* note 3.

that in January of 2006, AGM inserted Mark Kaplan into Debtor's business to operate and oversee daily operations and that Kaplan, who was employed as a consultant by AGM or AGM's agents, directed which payables to pay and when such payments would be made. (Compl.¶ 10.)

The case of *In re: Worldwide Wholesale Lumber, Inc., d/b/a Veracor Wood Products International,* No. 06–01499–jw, is currently pending in the United States Bankruptcy Court for the District of South Carolina. In addition, a civil action captioned *Tianjin Jinnan Dist. Tongmei Timber Co. Ltd. and Wenan Xinda Wood Industry Co., Ltd v. Worldwide Wholesale Lumber, Inc. (d/b/a Veracor Wood Products International) and AGM II, LLC,* No. 9:06–00516–PMD, 2006 WL 653457, was filed on February 21, 2006 in this court. On July 12, 2006, the court issued an Order of Abstention in *Tianjin,* staying the case until resolution of the bankruptcy petition.

On or about October 16, 2006, Vieira moved for the mandatory or permissive withdrawal of the reference in the Bankruptcy Case so that the case may be heard by this court. In her motion, Plaintiff argues this court must withdraw the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d) because "the causes of action against AGM require interpretation of laws regulating organizations and interstate commerce." (Plaintiff's Mot. to Withdraw Reference at 5.) In the alternative, Plaintiff argues this court should ex-

ercise its discretion to withdraw the reference to the Bankruptcy Court for cause pursuant to 28 U.S.C. § 157(d).

On or about October 25, 2006, AGM filed its Objection to the Chapter 7 Trustee's Motion for Withdrawal of the Reference. AGM first argues the motion must be denied because it is untimely, as the motion was filed less than two weeks before the November 2, 2006 pretrial hearing in the AGM Contested Matter.[3] Secondly, AGM argues mandatory withdrawal is not applicable because "*resolution* of the matters relevant to Debtor's estate, including the AGM Contested Matter, does not even require application, let alone substantial and material consideration, of any federal statutes as required by 28 U.S.C. § 157(d)." (AGM's Objections at 2–3.) Next AGM argues permissive withdrawal is not warranted because "[v]irtually every matter remaining for adjudication in the Debtor's chapter 7 case is a core bankruptcy matter." (AGM's Objections at 3.) Lastly, AGM argues this court should not exercise its discretion to withdraw the reference because an analysis of the relevant factors "strongly militates against permissive withdrawal." (AGM's Objections at 3.)

### ANALYSIS

Title 28, Section 157(d) governs a district court's withdrawal of a reference to the Bankruptcy Court. Section 157(d) states,

> The district court may withdraw, in whole or in part, any case or proceeding

---

**3.** In its Objection, AGM explains,

> The *"AGM Contested Matter"* refers to the contested matter initiated by the following: *AGM's Motion for Allowance of Claim and to Compel Payment Thereof* filed on June 13, 2006 (Docket No. 103, the *"Motion to Compel Payment"*), pursuant to which AGM seeks allowance of its secured claim and an order that its claim be indefeasibly paid from the proceeds of the liquidation of its collateral; *Trustee's Objection to Motion to*

> *Allow Claim* filed on June 21, 2006 (Docket No. 124, the *"Trustee Claim Objection"*), objecting to the allowance and payment of AGM's claim until Trustee could do discovery to determine if grounds exist to disallow or subordinate any or all of AGM's claim; and *Joint Objection to the Motion to Compel Payment* filed by the Chinese Mills on July 21, 2006 (Docket No. 148) (subsequently withdrawn).

> (AGM's Objection at 2.)

referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). This section contains both a permissive and a mandatory component, *see Cooper v. Courtaulds Fibers, Inc. (In re Bulldog Trucking, Inc.)*, No. C–B–90–31936, 1993 WL 787584, at *1 (W.D.N.C. Jan.26, 1993), and the "burden of demonstrating both mandatory and discretionary withdrawal is on the movant." *In re U.S. Airways Group, Inc.*, 296 B.R. 673, 677 (E.D.Va.2003); *see also In the Matter of Vicars Ins. Agency, Inc.*, 96 F.3d 949, 955 (7th Cir.1996) (mandatory withdrawal).

### A. Mandatory Withdrawal

The provision governing mandatory withdrawal states,

The district court shall, on *timely* motion of a party, so withdraw a proceeding if the court determines that *resolution* of the proceeding requires *consideration* of *both* title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added.) "There is no controlling Fourth Circuit precedent construing § 157(d)." *U.S. Airways*, 296 B.R. at 677. However, in considering the mandatory withdrawal provision, courts have required (1) that the party seeking mandatory withdrawal file a timely motion and (2) that the "moving party ... establish that the proceeding involves a substantial and material ques-

tion of both Title 11 and non-[Bankruptcy] Code federal law and that the non-Code federal law has more than a *de minimis* effect on interstate commerce." *Monterey Mushrooms, Inc. v. Carolina Produce Distribs., Inc. (In re Carolina Produce Distribs., Inc.)*, 110 B.R. 207, 209 (W.D.N.C. 1990) (internal quotation marks and citation omitted); *see also Block v. Anthony Tammaro, Inc. (In re Anthony Tammaro, Inc.)*, 56 B.R. 999, 1006–07 (D.N.J.1986).

The mandatory withdrawal provision "has spawned several cases and generated a variety of readings. This is perhaps not surprising considering its several ambiguous phrases, which combine lower court discretion with flexible terms such as 'resolution,' 'consideration,' and 'affecting.'" *In the Matter of Vicars Ins. Agency*, 96 F.3d at 952. Despite the different interpretations, there is "broad judicial agreement that the phrase 'requires consideration' cannot be given its broadest possible reading—as in merely to contemplate or give attention—for to read the phrase this broadly would trivialize the mandatory withdrawal requirement and limit drastically the bankruptcy court's jurisdiction." *U.S. Airways*, 296 B.R. at 677–78; *see also In the Matter of Vicars Ins. Agency*, 96 F.3d at 952.

Some courts have interpreted the term "consideration" to require substantial and material consideration such that mandatory withdrawal is "reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for resolution of the proceeding." *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir.1990) (internal quotation marks omitted); *see also In re White Motor Corp.*, 42 B.R. 693, 704 (N.D.Ohio 1984).[4] The United States District Court for the Eastern District of Virginia notes the majority approach, developed in the

**4.** "Other courts, a minority, apply section 157(d) literally and use the mandatory with-

Second Circuit and adopted by the Seventh Circuit, "holds that Congress would have intended to have cases withdrawn from the bankruptcy court and decided by a district judge only when the cases involved issues requiring significant *interpretation* of non-bankruptcy federal laws, not the straightforward application of a federal statute to a particular set of facts." *U.S. Airways,* 296 B.R. at 678 (internal quotation marks omitted).

The *U.S. Airways* court, however, found that because binding Fourth Circuit precedent was lacking, "the construction of § 157(d)'s mandatory withdrawal provision must be guided by the statute's plain language and purpose." 296 B.R. at 679. The court stated,

> This leads to the conclusion that the judicial consensus that "consideration" means more than merely "give attention to or contemplate" is surely correct; because the "consideration" of non-bankruptcy federal law that triggers mandatory withdrawal is that "required" for *"resolution"* of the proceeding, it follows, at a minimum, that mandatory withdrawal is not warranted unless the

bankruptcy court must *decide* a question under non-bankruptcy federal law in order to *resolve* the proceeding. In other words, an issue or question of non-bankruptcy federal law must be essential or material to the disposition of the bankruptcy proceeding before withdrawal of the reference is mandated. This much is clear from the statute's plain language. Less clear is whether, as some courts hold, the material non-bankruptcy federal law issue presented must be novel, difficult, or undecided in the circuit. Although it is doubtful that the non-bankruptcy issue must be any of these, [the court need not reach this issue].

*U.S. Airways,* 296 B.R. at 679–80.

■ This court agrees with the approach of the *U.S. Airways* court. The court must grant Plaintiff's Motion to Withdraw Reference if (1) Plaintiff has made a timely motion for withdrawal,[5] (2) the Bankruptcy Court would be called upon to apply non-bankruptcy federal law, and (3) the application of non-bankruptcy federal law is essential to the bankruptcy proceeding.[6] *See U.S. Airways,* 296 B.R. at 679–80.

---

drawal provision only when resolution of the proceeding requires 'substantial and material' consideration of both bankruptcy and non-bankruptcy law." *Contemporary Lithographers, Inc. v. Hibbert (In re Contemporary Lithographers, Inc.),* 127 B.R. 122, 128 (M.D.N.C.1991). This court held "that an unclear or complex federal statute" is not a prerequisite to mandatory withdrawal under § 157(d). *Id.* at 127. The court further stated, "The court believes that if a proceeding arises in a Title 11 case and presents a non-Title 11 federal question which will affect the outcome of the proceeding mandatory withdrawal applies." *Id.*

5. "By its plain language, 28 U.S.C. § 157(d) requires that motions to withdraw be 'timely.'" *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund),* 343 B.R. 63, 68 (S.D.N.Y.2006). "Generally, something will be considered timely if it is done at the first

reasonable opportunity. At the very least, timeliness would require that action be taken without undue delay." *In re Baldwin–United Corp.,* 57 B.R. 751, 753 (S.D.Ohio 1985) (internal quotation marks and citations omitted). The *Baldwin* court further stated, "[W]e consider a motion to be timely made if it was made as promptly as possible in light of the developments in the bankruptcy proceeding." *Id.* at 754. Although the parties contest whether Plaintiff's Motion to Withdraw Reference is timely, the court does not reach this issue as it denies Plaintiff's motion on other grounds.

6. Like the *U.S. Airways* court, this court need not reach the issue of whether the non-bankruptcy federal law issue must be novel, difficult, or undecided in this circuit. *See U.S. Airways,* 296 B.R. at 679–80. Plaintiff has not demonstrated the Bankruptcy Court will have to apply any non-bankruptcy federal

In her Motion to Withdraw Reference, Vieira argues mandatory withdrawal is appropriate because "the causes of action against AGM require interpretation of laws regulating organizations and interstate commerce." (Plaintiff's Mot. to Withdraw Reference at 5.) On the other hand, AGM argues "there is no federal statute (other than the Bankruptcy Code) that is necessary for the ultimate resolution of any of the matters left in this bankruptcy case." (AGM's Objection at 10.) AGM also states, "Trustee posits only state law claims against AGM, including breach of the 'trust fund doctrine,' general breach of fiduciary duty, abuse of confidence, commission of a wrong, unconscionable conduct, artifice, and concealment. Such claims do not arise under federal statutory law; rather, they are state law creations." (AGM's Objections at 10.) [7]

▪ Vieira states the Bankruptcy Court will have to interpret laws regulating organizations and interstate commerce but cites no such federal laws in her motion. At the hearing, Plaintiff's counsel cited two federal criminal statutes in arguing the Bankruptcy Court will be called upon to apply non-bankruptcy federal law.[8] However, Vieira did not demonstrate how these federal criminal statutes are relevant to the Bankruptcy Case, and in the court's opinion, they are irrelevant. *See U.S. Life Ins. Co. of N.Y. v. Selman,* No. 98–MC–00003–C, 1998 WL 278259, at *1 (W.D.Va.

May 26, 1998) ("A determination of guilt or innocence in a criminal action does not resolve the issue of dischargeability under section 523."); *cf. Terry v. Sparrow,* 328 B.R. 442, 449 (M.D.N.C.2005) ("Mr. Terry's attempt to collaterally attack the criminal judgment against him is outside the scope of the bankruptcy proceedings, and does not indicate any federal question that is appropriately considered in the bankruptcy cases."). Vieira's failure to indicate which non-bankruptcy federal laws the Bankruptcy Court will have to apply is fatal. As the moving party, Vieira has the burden to prove withdrawal is proper. *See U.S. Airways,* 296 B.R. at 677; *see also Vicars,* 96 F.3d at 955. Accordingly, the court finds mandatory withdrawal of the reference is not appropriate.

**B. Discretionary Withdrawal[9]**

▪ This court has discretionary power to grant Vieira's Motion to Withdraw pursuant to 28 U.S.C. § 157: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." Although the Fourth Circuit has not enumerated the factors to consider when determining whether "cause" has been shown, other circuits are in "substantial agreement on the factors that should be weighed in considering a discretionary

---

statutes in resolving the matters currently pending there. *See infra* pages 537–38.

7. The court notes the parties seem to disagree regarding whether the court should be examining the proceedings before the Bankruptcy Court or the proceedings in the case currently pending in this court in determining whether to grant Plaintiff's Motion to Withdraw Reference. As Plaintiff's motion seeks to withdraw the reference of the Bankruptcy Case to the district court, this court is of the opinion that the proceeding to examine in making this determination is the proceeding currently

pending in the Bankruptcy Court. *See* 28 U.S.C. § 157(d) ("The district court may withdraw ... any case or proceeding *referred* under this section ... for cause shown.").

8. Plaintiff cited 18 U.S.C. § 2314 and 18 U.S.C. § 2318. (Hr'g Tr. 8.)

9. A motion requesting discretionary withdrawal must, like a motion requesting mandatory withdrawal, be timely filed. *See United States v. Kaplan,* 146 B.R. 500, 503 (D.Mass. 1992). The court, however, does not reach the issue of timeliness. *See supra* note 5.

withdrawal of reference." *U.S. Airways,* 296 B.R. at 681. These factors include:

(i) whether the proceeding is core or non-core,

(ii) the uniform administration of bankruptcy proceedings,

(iii) expediting the bankruptcy process and promoting judicial economy,

(iv) the efficient use of debtors' and creditors' resources,

(v) the reduction of forum shopping, and

(vi) the preservation of the right to a jury trial.

*Id.* As the District Court for the Eastern District of Virginia noted in *U.S. Airways,* "[s]ome courts view the core/non-core factor as a threshold question that must be answered before analysis may proceed and is determinative of most of the other factors, while other courts simply place substantial weight on the core/non-core factor." *Id.* at 681–82. In the opinion of the *U.S. Airways* court, however, the "better view is that discretionary withdrawal of reference should be determined on a case-by-case basis by weighing all the factors presented in a particular case, including the core/non-core distinction." *Id.* at 682.[10]

■ Vieira makes several arguments in seeking permissive withdrawal: (1) the specific litigation against AGM is a non-core proceeding, (2) judicial economy favors withdrawing the reference because a jury trial will be demanded in the litigation against AGM, (3) there will be no delay if the district court withdraws the reference, (4) withdrawing the reference for the entire Bankruptcy Case will ensure the uniformity of bankruptcy administration, and (5) withdrawal of the reference is consistent with the prevention of forum shopping as the district court would hear all remaining issues. (Plaintiff's Mot. to Withdraw Reference at 6.)

On the other hand, AGM argues permissive withdrawal is not appropriate because (1) the "Bankruptcy Court can and should adjudicate the Core Matters, including the AGM Contested Matter," (2) withdrawal would undermine judicial economy, (3) withdrawal would cause undue delay and prejudice, (4) withdrawal would not bring uniformity to bankruptcy administration, and (5) withdrawal would promote, rather than prevent, forum shopping. (AGM's Opposition at 12–18.)

Having examined the *U.S. Airways* factors, the court declines to exercise its discretion to withdraw the reference. The court finds the following factors persuasive.

### 1. Core Versus Non–Core[11]

Title 28, Section 157 of the United States Code indicates which proceedings are core proceedings.

Core proceedings include, but are not limited to—

10. In *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095 (2d Cir.1993), the court stated it should first determine whether a claim is core or non-core "since it is upon this issue that questions of efficiency and uniformity will turn." *Orion Pictures,* 4 F.3d at 1101. "[O]nce a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Id.* However-

er, this court is persuaded by the reasoning of the *U.S. Airways* court.

11. A bankruptcy judge may hear and determine all core proceedings, but must submit to the district court proposed findings of fact and conclusions of law regarding a non-core proceeding, unless the parties consent to a referral of the non-core proceeding for determination by the bankruptcy judge. *U.S. Airways,* 296 B.R. at 682 n. 18 (citing 28 U.S.C. § 157(b)(1) and (c)(1)-(2)).

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover fraudulent preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. § 157(b)(2).

█ As the Fourth Circuit has noted, "[t]he distinction between what is 'core' and what is 'non-core' is far from clear." In this case, however, the statutory language is clear. Plaintiff is seeking to withdraw the reference of the Bankruptcy Case to the district court. However, as the AGM Contested Matter involves AGM's Motion for Allowance of Claim, the AGM Contested Matter appears to be a core proceeding. Pursuant to 28 U.S.C. § 157(b)(2), allowance or disallowance of claims against the estate are core proceedings. *See also Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 401 (4th Cir.1992) ("In addition, § 157(b)(2)(B) clearly defines as core those proceedings that deal with the allowance or disallowance of claims against property of the estate."). The court thus finds the core/non-core determination favors denying Plaintiff's Motion for Withdrawal of Reference.

## 2. Judicial Economy

Vieira asserts judicial economy would be served by withdrawing the reference because the district court will have de novo review of the Bankruptcy Court's orders if the matter is non-core and the parties fail to consent to entry of a final order. Vieira also asserts, "In addition to the litigation against AGM, there are only a few remaining issues in the Chapter 7 bankruptcy case, and it is best to have one forum hearing those issues." (Plaintiff's Mot. to Withdraw Reference at 6.) AGM says withdrawal would not be an efficient use of judicial resources, as the trial on the AGM Contested Matter is a short time away and the district court would have to duplicate the efforts of the Bankruptcy Court to familiarize itself with the last stage of the

AGM Contested Matter. (AGM's Objection at 14.)

This court agrees with AGM and finds this factor favors denying Vieira's Motion to Withdraw Reference. At the hearing, Mr. Summerall noted that Chief Judge Waites set trial to begin in the "contested bankruptcy matters" on January 8, 2007. (Hr'g Tr. 25–26.) The Bankruptcy Court has likely expended significant judicial resources to date on this trial, and even if the district court must review some issues decided by the Bankruptcy Court de novo, such a review is not, in the court's opinion, a waste of judicial resources.

### 3. Prevention of Forum Shopping

Vieira states that withdrawing the reference is consistent with the prevention of forum shopping since one court will hear all of the remaining issues. AGM disagrees, stating that withdrawal would promote, rather than prevent, forum shopping.

AGM argues that in seeking to withdraw the reference, Vieira is engaging in forum shopping. Specifically, AGM states the Trustee's purpose in bringing the Motion to Withdraw is to "bootstrap the AGM Contested Matter onto the District Court Action, so that her allegations of lender liability and equitable subordination will linger." (AGM's Objections at 18.) At the beginning of the Bankruptcy Case, AGM sought relief from the automatic stay, and AGM and the Trustee agreed to resolution of that motion whereby the Bankruptcy Court would grant relief from the stay to allow AGM to liquidate its collateral, but AGM would deliver the proceeds to the Trustee in escrow pending the allowance of AGM's secured claim and the resolution of lender liability or equitable subordination allegations. The Bankruptcy Court agreed to this arrangement, and AGM sold the collateral and delivered over $4.2 million to the Trustee. AGM then moved for final allowance and indefeasible payment of its secured claim on June 13, 2006. Trustee objected, alleging defenses involving equitable subordination and lender liability. The Trustee further encouraged the Bankruptcy Court to require all creditors in the Bankruptcy Case to bring any objections to AGM's claim allowance motion, urging that " '[T]his way all issues of claim allowance and subordination could be litigated in a single proceeding saving both time and money to all involved.' (Docket No. 137.)." Other creditors did join in the Trustee's objection, and the Bankruptcy Court set a discovery cutoff in the AGM Contested Matter for September 20, 2006 and set a pretrial hearing on October 2, 2006.

On the eve of the expiration of discovery cutoff, the other creditors withdrew their objection to AGM's claim allowance motion, and the Trustee moved for an extension of the discovery cutoff and pretrial hearing. According to AGM, both the other creditors and the Trustee asserted for the first time in those pleadings that they did not intend for the trial of the AGM Contested Matter to include the issues of lender liability and equitable subordination. AGM objected to this attempted bifurcation of the AGM Contested Matter. While the Bankruptcy Court extended the discovery cutoff to October 20 and reset the pretrial hearing to November 2, that court "did not address the Trustee's attempt to bifurcate the trial, leaving the Trustee at risk as to the potential preclusive effect of her decision whether to introduce any evidence of lender liability or equitable subordination at the trial of the AGM Contested Matter." (AGM's Objections at 18.) AGM states that if this court grants withdrawal of the reference, the Trustee "may attempt to assert that there are no preclusive consequences to her strategic decision not to try lender liability and equitable subordination issues in the AGM

Contested Matter." (AGM's Objections at 18.)

The court is not persuaded that granting Plaintiff's Motion for Withdrawal of Reference is consistent with the prevention of forum shopping. AGM did not file the involuntary bankruptcy petition, nor did it file the motion at issue in this Order.

**4. Preservation of Right to a Jury Trial**

Although neither party mentions this factor in their memoranda, this factor is worth noting. As the Ninth Circuit stated,

> If the district courts refused to review bankruptcy court jury verdicts on non-core matters with the *de novo* standard, they would be acting contrary to express statutory mandate, *see* section 157(c)(1). Yet, if they reviewed the bankruptcy court verdicts *de novo* they would be at odds with the Seventh Amendment. Faced with this problem, several courts have concluded that where a jury trial is required and the parties refuse to consent to bankruptcy jurisdiction, withdrawal of the case to the district court is appropriate.

*Taxel v. Electronic Sports Research (In re Cinematronics, Inc.)*, 916 F.2d 1444, 1451 (9th Cir.1990). Interestingly, the Fourth Circuit held "that bankruptcy judges are not authorized to conduct jury trials; where the Seventh Amendment provides the right to a jury trial in a core proceeding in bankruptcy, it must take place in the district court." *Official Comm. of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.)*, 13 F.3d 122, 128 (4th Cir.1993). However, the Bankruptcy Court can conduct a jury trial in certain circumstances: "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankrupt-cy judge, the bankruptcy judge may conduct the jury trial if specifically designated to exercise jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e).[12]

In her Motion to Withdraw Reference, Vieira seeks to take the matter currently before the Bankruptcy Court and have it heard by the District Court. The matter before the Bankruptcy Court involves AGM's Motion for Allowance of Claim, which is triable in equity. *See Lu v. Grant (In re Sunshine Trading & Transp. Co.)*, 193 B.R. 752, 754 (Bankr.E.D.Va.1995) (citing *Katchen v. Landy*, 382 U.S. 323, 336, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)). The right to a jury trial is thus not implicated in the Motion for Allowance of Claim. *See Skippy, Inc. v. CPC Int'l, Inc.*, 674 F.2d 209, 215 (4th Cir.1982) (noting the dismissal of the damages claim, leaving only an equitable claim, precluded trial by jury). As a result, this factor does not favor withdrawing the reference.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiff's Motion to Withdraw Reference is **DENIED.**

**AND IT IS SO ORDERED.**

---

12. It should be noted that 28 U.S.C. § 157 was amended effective October 22, 1994 to provide that if the right to a jury trial applies, the bankruptcy court may now conduct the jury trial if the bankruptcy judge is specially designated by the District Court and all parties to the proceeding have expressly consented.
*Samson v. Ward (In re Ward)*, 184 B.R. 253, 254 n. 1 (Bankr.D.S.C.1995).